[Sac. No. 897.   Department One.—January 30, 1902.]

EDWARD DOLAN, Respondent, v. SIERRA RAILWAY COMPANY OF CALIFORNIA, Appellant.

<div style="float:right">135 435
149 781</div>

NEGLIGENCE OF RAILROAD COMPANY—MASTER AND SERVANT—DEFECTIVE RAILS AND TRESTLE—PROXIMATE CAUSE OF INJURY.—In an action by a brakeman employed by a railroad company, for damages for personal injuries caused by negligence of the company, where there was evidence tending to show that the engine, by reason of a defect in the rails, left the track and passed upon a trestle, which broke down by reason of its defective construction, to plaintiff's injury, the defective construction of the trestle was the proximate cause of the injury; and it is immaterial how or when the break in the rails was occasioned.

ID.—CONSTRUCTION OF TRESTLE—DUTY TO EMPLOYEE—ORDINARY CARE. —The railroad company was only bound to exercise ordinary care in the construction of the trestle, in the discharge of its duty toward its employee, as distinguished from its duty toward its passengers.

ID.—MATTER OF LAW—SUPPORT OF VERDICT—CONFLICTING EVIDENCE— APPEAL.—Where the verdict was against the railroad company, and in favor of the employee, the verdict cannot be disturbed upon appeal, unless the court can say, as matter of law, upon the evidence, that ordinary care was used in the construction of the trestle. Where there was a direct conflict in the evidence, and there was sufficient evidence tending to show that the trestle was negligently constructed, and was in an improper and unsafe condition, the verdict cannot be disturbed, regardless of the question of preponderance of the evidence.

ID.—RISK NOT ASSUMED BY EMPLOYEE—IGNORANCE OF DEFECTIVE CON-STRUCTION.—Where the employee was in fact ignorant of the de-fective construction of the trestle, he did not assume the risk thereof by traveling over it. He was not required by the law to examine the trestle, to ascertain whether or not it was defective or unsafe.

ID.—INSTRUCTION TO BE CONSIDERED AS A WHOLE—SUITABLE APPLIANCES —DELEGATION OF AUTHORITY BY MASTER.—An instruction must be taken together as a whole, and the fact that the one part of it, con-sidered separately, may appear erroneous does not make it sub-stantially defective, where, taken as a whole, it is designed to show merely that the master cannot avoid his liability by delegating authority to a fellow-servant to furnish suitable appliances.

ID.—VERDICT NOT EXCESSIVE.—Where the plaintiff was injured about the head, and was unconscious ten or twelve days following the injury, and there is evidence tending to show that his injuries are permanent, a verdict in the sum of seven thousand dollars is not excessive.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

S. D. Woods, and J. B. Curtin, for Appellant.

E. W. Holland, for Respondent.

GAROUTTE, J.—Action brought by a brakeman, an employee of defendant, for damages for personal injuries received while in the discharge of his duty. An engine, with tender in front, was traveling toward Cooperstown. By reason of a defect in the rails, the engine left the track and traveled about fifteen feet upon the ties, when it passed upon a bridge, or trestle, some ninety feet in length. This bridge went down with the engine, and plaintiff and others were injured.

Upon the part of plaintiff, it is claimed that the engine left the track because the rails were broken, and that they had been in such condition four or five days; it is further claimed that thereafter the engine traveled about fifteen feet upon the ties, when it passed upon a trestle, and went down because the trestle was improperly constructed. The court does not find it necessary to consider that branch of the case bearing upon the defective rails. For, even conceding it to be true that the defective rails caused the engine to leave the track, still, if the trestle was defectively constructed, and for that reason the engine crashed through it, injuring the plaintiff, it may well be said that the defective trestle was the proximate cause of the injury.

The defendant was not required to use that degree of care in the construction of this trestle, in satisfying the demands of the law as to its duty toward this brakeman, that it was required to use in its construction, viewed from the standpoint of its duty toward a passenger upon its train. Reasonable care—that is, ordinary care—is the measure of an employer's duty to his servants, in the selection of tools, materials, etc., with which and upon which the servant is to labor. It therefore follows that if defendant exercised ordinary care in the construction of this trestle,—that is, if it was built in the man-

ner that an ordinarily prudent man would have built it, if he himself had intended to use it in the way this plaintiff was using it,—then defendant performed its full duty toward its servant. (*Brymer* v. *Southern Pacific Co.*, 90 Cal. 496.) In the light of this legal principle, the court is brought to a consideration of the evidence bearing upon its construction. And before a new trial can be ordered upon the ground that the evidence is too weak to show a failure of duty toward this plaintiff in its construction, this court must be able to say, as matter of law, that, under the evidence, ordinary care was used in its construction. Yet, when the evidence is examined upon the question, a direct conflict upon this point appears. By appellant's brief the credibility of plaintiff's principal witness is attacked. But his credibility was a matter essentially for the jury to pass upon, and it would be an exceptional case where this court would cast out evidence from the record, with the stamp of falsehood upon it, after twelve men, duly convened under the law to test its credibility, had given it faith and credit. It therefore follows that the evidence of the witness Buck as to the construction of the trestle will be credited by this court, and, so credited, it supports the verdict of the jury. And upon this question it is immaterial that the record discloses other evidence conflicting with his testimony.

In speaking to this matter, the witness said: "Well, it was in bad shape. The bridge was never finished, in the first place. I called the attention of the officers of the Sierra Railway Company to the unfinished condition of this bridge prior to the wreck, at various times during the six months, we will say, and so on. . . . Nothing was done by Mr. Potts in relation to the trestle.—Q. Well, from the examination you made, from your experience as a railroad-bridge constructor, can you state whether or not that bridge was safe or in a proper condition to be used for the purpose it was being used by the defendant?—A. No, sir; it was not. . . . —Q. From your experience as a bridge constructor and railroad-man, could you state whether or not, if that bridge had been properly constructed and in proper repair, whether that engine would have broken it down on this occasion?—A. No, sir; it would not. . . . —Q. What did this bridge lack in

order to make it safe and put it in proper condition?—A. A timber, six by eight, sixteen feet long, for girts to hold the bents together. . . . This bridge had nothing but a little cleat nailed under the stringers with twenty, thirty, or forty spikes to hold the bridge together.—Q. I understand you to say if this trestle had been properly built, it would have had these girts?—A. Yes, sir; and on this day the engine could not have knocked it down; would not have knocked it down if it had been properly constructed. . . . —Q. Did you notify Mr. Potts that these girts were needed on this bridge prior to this accident?—A. Yes, I ordered them on several occasions. . . . Never received them. They were never furnished." It may be well to notice that the witness Buck was an expert railroad-bridge builder, and in that capacity was in the employ of defendant at the time of the accident, and had been in such employment for two years immediately prior thereto. In view of the foregoing evidence, this court cannot say, as matter of law, that the defendant, in the construction of this trestle, performed its full duty to its servant, the plaintiff.

It is next claimed that the accident occurred by reason of the act of the engineer, a fellow-servant with plaintiff, in running the train at an excessive rate of speed. And defendant, after reviewing in its brief the evidence found in the record bearing upon this point, declares: "We submit, in view of the foregoing evidence, that the plaintiff has not by a fair preponderance of evidence shown that the engine was running at a moderate and safe rate of speed." In answer to this contention, it is sufficient to say that this court has nothing to do with the matter as to where the preponderance of evidence lies. If there is a substantial conflict in the evidence, then this court cannot disturb the verdict of the jury. And the question of the presence of a substantial conflict is in no way dependent upon the question of preponderance of evidence. Appellant also insists that the breaking of the rails where coupled together was a fresh break. But, as we have seen, even if such should be conceded to be the fact, still the injury to plaintiff, as occasioned by the engine breaking through the defective bridge or trestle, was a damage for which he could recover.

The claim is made that plaintiff assumed the risk of this defective trestle in traveling over it. In view of the fact that

he did not know it to be defective, and the further fact that he was not called upon by the law to examine the trestle to ascertain whether or not it was defective, there is nothing in the claim made. As to risk assumed by the servant, see *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598; *Starr* v. *Kreuzberger*, 129 Cal. 123, 129.[1]

Complaint is made of the following portion of instruction numbered 1: "The duties which a railroad company owe to its servants, and which it is required to perform, are to furnish suitable machinery and appliances by which the service is to be performed, and to keep them in repair and order." Standing alone, this declaration does not contain a sound principle of law; for the law only demands that the master exercise ordinary care in furnishing suitable machinery, etc., to the servant with which to do his work. At the same time, taking the instruction as a whole, it is not substantially defective. Taken as a whole, we find it directed to the point that the master cannot avoid his liability by delegating his authority to a fellow-servant to furnish suitable machinery. The shifting or avoiding of the liability of the master is the point to which the instruction was directed. And we find the entire instruction taken from the language of the court in the case of *Daves* v. *Southern Pacific Co.*, 98 Cal. 19, 24,[2] and the same principle has been repeatedly declared since that time. (*Burns* v. *Sennett*, 99 Cal. 368; *Nixon* v. *Selby Smelting etc. Co.*, 102 Cal. 464; *Mullen* v. *California Horseshoe Co.*, 105 Cal. 83; *Higgins* v. *Williams*, 114 Cal. 184.) In the next succeeding instruction we find the trial court declaring the true rule as to the duty of a master toward his servant in this language: "The jury are instructed that a railroad company, as regards its employees, must use all ordinary care and supervision to keep its roadway in a good and safe condition." The same principle of law is also directly declared in many other portions of the court's charge.

The verdict of seven thousand dollars is claimed to be excessive. The court will not dwell upon the evidence in detail in this regard. The plaintiff was injured about the head, and was suffering from this injury at the time of the trial. He was unconscious for ten or twelve days following the injury,

[1] 79 Am. St. Rep. 92.    [2] 35 Am. St. Rep. 133.

and there is evidence tending to show that his injuries are permanent. These facts were sufficient to support the verdict.

For the foregoing reasons the judgment and order are affirmed.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.